NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE DOROTHY M. HARTMAN**

---

2013-1070
(Serial No. 11/003,123)

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board.

---

Decided: March 8, 2013

---

DOROTHY M. HARTMAN, of Philadelphia, Pennsylvania, pro se.

RAYMOND T. CHEN, Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, for appellee. With him on the brief were NATHAN K. KELLEY, Deputy Solicitor, BENJAMIN T. HICKMAN, Associate Solicitor and SYDNEY O. JOHNSON, JR., Associate Solicitor.

---

Before NEWMAN, DYK, and PROST, *Circuit Judges.*

PER CURIAM.

Dorothy M. Hartman filed Patent Application No.

11/003,123 for a business method called the "Accessing Accessibility Process." In essence, Hartman claimed to have invented the Internet. The examiner rejected all thirty-five claims of Hartman's amended application as indefinite under 35 U.S.C. § 112, ¶ 2. The Board of Patent Appeals and Interferences ("Board")[1] affirmed. We *affirm*.

## BACKGROUND

Section 112 of title 35 requires that a patent "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his [or her] invention." 35 U.S.C. § 112, ¶ 2 (2006). "The statutory requirement of particularity and distinctness in claims is met only when [the claims] clearly distinguish what is claimed from what went before in the art and clearly circumscribe what is foreclosed from future enterprise." *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942). Indefiniteness is a question of law, which we review de novo. *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1376 (Fed. Cir. 2001).

In December 2004, Hartman filed a patent application entitled "Accessing Accessibility Process." The specification described the invention as "a new and revolutionary business process in which the computer by way of a modem is used to access, retrieve, and exchange goods, services, and information." Supp'l App. 85. Hartman asserted that her "introduction of this invention in 1990 . . . led to the formation of the INTERNET [sic]." *Id.* at 91.

---

[1] The Leahy-Smith America Invents Act renamed the Board the Patent Trial and Appeal Board. *See* Pub. L. No. 112-29, § 7(a)(1), 125 Stat. 284, 313 (2011). The Act also amended paragraph 2 of section 112 and redesignated it as subsection 112(b). *See id.* § 4(c)(a)(A), 125 Stat. at 296. No substantive changes were made of relevance to this appeal. For consistency with the decisions on review, we use the prior designations.

In May 2011, Hartman replaced the original claims with thirty-five new claims, of which the first (designated claim 26) is representative:

> Claims a novel business method whereby the computer with its communicable devices is the focal point of the business and transactions occur online or in cyberspace. Herein cyberspace is referred to as that virtual space within which transactions and exchanges occur and that exists between the interconnection(s) of the communicable devices with remote websites. Cyberspace is infinite and thus an infinite number of transactions or interactions is possible. A website(W) is herein referred to as pages that are received from the host or recipient computer and that display on the monitor of the user's computer once the connection is established. See Figs[.] 1-6.

Supp'l App. 1818.

The examiner rejected all thirty-five claims in a June 2011 final action, concluding that each claim was indefinite under paragraph 2 of section 112. The examiner observed that the claims "fail[] to define the invention in the manner required by" the statute, "are narrative in form and replete with indefinite and functional or operational language," and are not limited to a single sentence per claim. Supp'l App. 1966.

Hartman appealed to the Board, which affirmed the examiner's indefiniteness rejection. The Board found that Hartman had failed to address the substance of the examiner's rejection in her brief on appeal, and therefore had not "contest[ed]" the rejection sufficiently to allow the Board to review it. *See Ex Parte Hartman*, No. 2012-8681, at *5-6 (B.P.A.I. July 25, 2012).

## DISCUSSION

Hartman makes no effort to distinguish between the

claims in her briefs on appeal, or to address individually the grounds on which the examiner rejected each of the claims. Nonetheless, we have reviewed each of the thirty-five claims, and we conclude that each one is indefinite.

The majority of the claims are denominated as method claims.[2] Many of these method claims (specifically, claims 26, 30, 33, 35, 37, 39, 43, 44, 48, 51, 52, and 57) fail to recite any specific steps, instead merely stating the existence of a "novel business method" (or an "innovative business method") and describing the benefits that flow from its use. Supp'l App. 1818-28. Hartman's failure to recite any required steps renders these claims indefinite, since it leaves the claims without any meaningful limitations. The remaining method claims (claims 27, 28, 29, 31, 32, 34, 40, 41, 42, 45, 46, 47, 49, 50, 53, 54, 56, 58, 59, and 60) fare no better. These claims recite what appear to be individual steps of a method, in various permutations. The specification discloses that these steps are similar to those taken by users of prior-art online databases. Because Hartman has not "clearly distinguish[ed] what is claimed from what went before in the art and clearly circumscribe[d] what is foreclosed from future enterprise," *see Union Carbon Co.*, 317 U.S. at 236, the examiner properly rejected these claims as indefinite.

We have considered Hartman's other arguments, in-

---

[2] The few claims that defy classification as method claims appear to consist of nothing more than descriptions of benefits allegedly flowing from Hartman's invention. These claims recite "a revolutionary way of doing business wherein the term cyberspace is used interchangeably as a 'marketplace,' 'warehouse,' [and] 'clearinghouse,'" claim 36; "teaching the concept of the infinity of cyberspace as a tool to improve commerce and to grow the economy," claim 38; and "aiding small businesses and entrepreneurs [by] mak[ing] startups easier and more affordable," claim 55. *See* Supp'l App. 1821, 1826.

cluding her allegations of misconduct by the Patent and Trademark Office, and find them to be without merit.

**AFFIRMED**